IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1890.

## ESTATE OF NINIAN IRWIN, DECEASED.

APPEAL BY N. A. IRWIN FROM THE ORPHANS' COURT OF
MONTGOMERY COUNTY.

Argued February 5, 1890—Decided March 3, 1890.
[To be reported.]

1. When an auditor, appointed to distribute the estate of a decedent, has
rejected a claim, on the ground that it was insufficiently established,
without palpable error, and his rejection is sustained by the court be-
low, the decree of confirmation will not be reversed, and the question
whether the presentation of the claim on a former audit, but without
adjudication thereon, will toll the bar of the statute of limitations, will
not arise.

2. It may be that a claim "was as fully proved as the nature of the case
admitted;" but, while an old claim is more difficult of proof than one
that is of recent origin, the rules of evidence cannot be relaxed in favor
of stale claims on that account; on the contrary, such claims require
and should receive additional caution before they are admitted as es-
tablished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 109 July Term 1889, Sup. Ct.; court below, number
and term not given.

On October 4, 1886, N. Adeline Irwin filed her second account as executrix of the will of Ninian Irwin, deceased. Exceptions having been filed by creditors, the court below appointed *Mr. Jacob V. Gotwals* auditor, to pass upon the exceptions and to make distribution of the moneys in the hands of the accountant.

At the hearing before the auditor the following facts were shown: Ninian Irwin died May 4, 1877, leaving both real and personal estate, but owing a large amount of indebtedness. By his will, admitted to probate on May 17, 1877, he gave all his estate to his wife, N. Adeline Irwin, and appointed her sole executrix. The personalty was consumed in the payment of funeral and other expenses, and on September 9, 1878, the executrix presented in the Orphans' Court of Montgomery county a petition praying for the sale of certain real estate for the payment of debts. The petition contained a schedule of debts, among which were mentioned the following items : " Baney estate, $1,000 ; monies held by decedent in trust for petitioner, $18,003.32." Upon this petition an order of sale was awarded, and subsequently the executrix reported a sale of real estate situated in said county, which sale the court confirmed.

On February 5, 1881, the executrix filed her first account, exhibiting a balance in her hands for distribution amounting to $1,374.53, the whole of which was the proceeds of sale of real estate. Mr. J. Wright Apple was thereupon appointed auditor for the purpose, inter alia, of making distribution of the balance shown by that account. At the hearing before this auditor, the executrix presented a claim for $18,003.32 and J. Wilson Irwin, assignee of Andrew Baney, presented a claim for $1,145. These two claims are those above mentioned as included in the schedule of indebtedness set out in the application for the sale of real estate.

The only testimony offered with reference to the Baney claim was the following, given by J. Wilson Irwin :

" I know that Ninian Irwin was guardian of Andrew Baney, son of Daniel Baney, late of Cherrytree, Venango county, Pa. I paid Andrew Baney on the 29th of May, 1879, the sum of $1,145, balance claimed by him as due to said Baney from Ninian Irwin as his guardian. (Paper B shown witness.) This paper is the assignment and power of attorney given to me by Andrew Baney."

### Statement of Facts.

The same witness testified, also, in support of the claim of the executrix, that he was lessee of certain oil lands in Venango county, in which the executrix had a royalty interest; that the royalties accruing therefrom to her were paid from time to time by the witness to her husband, the decedent; that, according to the recollection of the witness, the total amount so paid was between $17,000 and $20,000; that a paper shown to the witness and marked exhibit A was a statement which the witness made out in 1875 or 1876 from his books, showing the sums paid to the decedent, and that the books and papers of the witness were destroyed by fire in April, 1877. On cross-examination, the witness testified that Mrs. Irwin never complained to him that she had not gotten her royalties during the years the witness was operating the oil lands.

The statement identified by J. W. Irwin consisted of a large number of items and was in the following form, only the first and last items and the footing being given:

| August 1, 1868, Royalty Nos. 26 and 32, | $2,513.83 |
| *         *         * | |
| August 1, 1871,   "     "     "   "   " | 341.25 |
| | $18,003.32 |

This statement was not offered in evidence, nor was any adjudication upon either of the claims above mentioned made by the auditor, all parties in interest having come to an agreement that the entire fund for distribution should be awarded to a judgment creditor, as the proceeds of land upon which his judgment had been a lien. The auditor, Mr. Apple, made a report distributing the fund before him in accordance with that agreement. To his report, which was filed December 20, 1881, and confirmed in due course, he attached his notes of the testimony taken before him.

Some time after the filing of her first account, the executrix received certain money which during the life of the decedent had been secured in his favor upon lands in Somerset county held in trust by Judge Baer, and that money constituted the only item of debit in her second account.

Among the credits taken in the second account was one for $500 paid to J. W. Irwin, on account of the Baney claim above mentioned. This credit was excepted to.

### Statement of Facts.

At the hearing before this auditor, Mr. Gotwals, the two claims above mentioned were again presented. The unpaid portion of the Baney claim was presented by the personal representatives of J. W. Irwin, who was then deceased.

In support of the claim of Mrs. Irwin, the first auditor's report and all papers connected therewith, including the notes of testimony, were offered in evidence. Mr. G. R. Fox testified that the paper marked exhibit A, mentioned in the testimony of J. W. Irwin when examined as a witness before the former auditor, had not been attached to the auditor's report and had been mislaid or lost; that a paper produced by the witness, and also marked A, was in the handwriting of J. W. Irwin, deceased, and was believed by the witness to be a correct copy of the lost paper; that certain papers fastened together and marked E, were all in the handwriting of J. W. Irwin, and the witness believed them to be the original returns made by J. W. Irwin of moneys due from him to Mrs. Adeline Irwin, and, so far as they went, to be the same that were included in his statement, paper A; and that upon the back of a paper produced by the witness marked D, was a lead-pencil statement in the handwriting of the decedent, Ninian Irwin. The pencil statement thus referred to was headed, " N. A. Irwin's oil interest by S. Woods." Some of the items included in it corresponded in date and amount with those contained in exhibit A, but others did not. The footing at the bottom of it was $16,206.04, opposite which were the words, " Am't of N. A. Irwin's oil div'd."

The papers mentioned in the testimony of Mr. Fox were all offered in evidence and they, as well as the whole of his testimony, were objected to. The executrix also offered in evidence a letter from Thomas Woods to Ninian Irwin and J. W. Irwin, dated May 4, 1868, stating that the writer had disposed of one fourth of the oil from the Venango county lands to Mrs. Adeline Irwin, and directing that one fourth of the proceeds of the lease be paid to her. Objected to. The executrix called a witness who testified that he thought himself sufficiently acquainted with the signature of Thomas Woods to give an opinion respecting it, and that the signature to the letter of May 4, 1868, was genuine. The letter was then again offered in evidence and again objected to.

In regard to the Baney claim, and the credit taken by the

executrix for the payment of $500 on account thereof, Mr. G. R. Fox, after offering in evidence certain papers mentioned in the auditor's report, infra, testified as follows :

The papers which I have given in evidence of Andrew Baney's claim were found by me, except the assignment of J. W. Irwin, among the papers of Ninian Irwin, deceased, after I was employed as counsel by the executors, some time after his death. Finding that he was the guardian of this young man and that he had acknowledged that this balance was in his hands due his ward, and there being no funds of the estate that I could find, I asked J. Wilson Irwin to purchase the claim. He was a nephew and friend of Mrs. Irwin. I drew that assignment and sent it to him to have it executed. He produced it before the auditor, J. Wright Apple, Esq., who had been appointed by the court to make distribution of the balance shown to be in the hands of Mrs. Irwin, executrix, by her first account. I paid to J. W. Irwin five hundred dollars of that debt out of money of the estate, and credit was taken for it in the second account (this account).

Cross-examined : Mr. J. Wilson Irwin paid for this claim what is stated in the assignment. I was not present when he paid it. Parties in western Pennsylvania. I, as a lawyer, thought that J. Wilson Irwin was a preferred creditor in this estate. I don't say that he was entitled to be paid in full as to all creditors. I can't answer as to what creditor he was a preferred creditor.

Q. All that you know or knew of Mr. Irwin having acknowledged that he was the guardian of this young man and owed a balance of money, so far as Ninian Irwin was concerned, you learned from the papers that you have testified to ? A. Yes, except the verbal statement of the executrix.

Q. Did you ever have anything from Ninian Irwin in his lifetime with reference to this claim ? A. I did not. I had no intercourse with Mr. Irwin about any business at that time.

Q. Do you have any personal knowledge, other than hearsay, that J. Wilson Irwin actually paid $1,500, or any other sum, in the alleged purchase of this claim, or any other claim against this estate ? A. My personal knowledge is that I have been the only counsel of the estate for Mr. Irwin since some time in 1877, and no claim has been made since that assign-

ment, upon the estate, by Andrew Baney or any one for him, and Mr. J. W. Irwin appeared before the former auditor in this case and presented this claim. (Answer objected to.) Question repeated. A. None except what I have stated in my last answer.

Q. Does your answer preceding the last answer state any sum that you know was actually paid? A. I have already said that I was not present at the payment.

Q. If you were not present at the payment, how do you know of your own knowledge that anything was paid? A. I don't of my own personal knowledge, of course.

—Upon the matters in controversy, the auditor reported as follows :

### MRS. IRWIN'S CLAIM.

Mrs. Adeline Irwin, wife of the decedent and accountant in this case, also presents a claim for money received by said decedent in his lifetime to her use, amounting to about $18,000 with interest from May 4, 1877.

This claim is objected to and contested on two grounds: 1. That it has not been properly proven. 2. That it is barred by the statute of limitations.

As to its proof, the former auditor's report and the testimony taken by him is relied on, and the same has been offered in evidence here, under objections.

Your auditor has grave doubts whether said auditor's report, the testimony then taken, and what said report contains, is legal evidence to establish this claim. In Ellmaker v. Insurance Co., 6 W. & S. 442, it was held that an auditor's report is not evidence to show the truth of any fact adjudicated, but is only testimony as to what amount was paid on judgment. In Leeds v. Bender, 6 W. & S. 315–318, it was held that "the report of an auditor appointed to distribute moneys arising from the sale of real estate is not evidence in a subsequent ejectment for the land bought by the sheriff's vendee." If the report of an auditor and a fact adjudicated by him is not testimony, as the above authorities would seem to indicate, much less would any testimony taken by him, and not acted upon, be evidence.

But granting that the testimony taken by this auditor and his report is evidence, how does this claim stand as to proof? The money alleged to have been paid the decedent in his life-

time for the wife, and for which this claim is made, arose from
the payment of certain royalties for oil lands, in which it was
alleged Mr. Irwin had one half interest, and which were leased
by J. Wilson Irwin and other parties. But one witness was
produced and examined before the former auditor, and none
here. He was examined and questioned about certain papers
in regard to this matter, but none were offered in evidence or
admitted, and there the matter ended. The auditor did not
pass upon or allow the claim; it was not acted upon or adjudi-
cated. It is true, no formal objections were made at the time,
but the lengthy cross-examination of the only witness called
by plaintiff would seem to indicate that when the necessary
papers would have been offered in evidence objections would
have been made. The claim certainly was not admitted and
the evidence then offered did not sustain it.

What additional testimony have we now? Nothing except
a few exhibits have been offered, marked A, D, E and O, which
have not been properly proven and identified; but even these,
if proven, do not of themselves establish the claim and show
any indebtedness of the decedent to his wife. These exhibits
do not correspond or agree as to the amounts. Exhibit A
shows $18,003.32. Lead-pencil marks and figures on the back
of exhibit D, said to be in the handwriting of decedent, shows
$16,205.04, and, according to J. Wilson Irwin's testimony, it
was as high as $20,000; and a comparison of certificates con-
tained in exhibit E with exhibit A, of which the latter is a
copy, shows a marked difference in the number of payments
and amounts. With such differences how can a safe conclusion
be reached? According to exhibit A, the last payment was
made August, 1871, six years prior to decedent's death. His
will, made March, 1875, says nothing about any indebtedness to
the wife, and there is no proof of any acknowledgment of any-
thing due her. The claim fails, therefore, for want of proof.

But another serious and fatal objection, which will prevent
a recovery, is the statute of limitations. The last payment of
the money alleged to have been received by the decedent for
the wife was made in August, 1871, and the claim was first pre-
sented at the meeting of audit, June 4, 1881, nearly ten years
after it was due, and now again after a lapse of seventeen years.

It is clear that at the first meeting of audit, to wit: June 4,

1881, this alleged claim was not barred. The statute does not begin to run against a married woman until the death of her husband. In Towers v. Hagner, 3 Wh. 48, it was ruled that when a wife lends the income of her separate estate to her husband, the statute of limitations does not begin to run against her claim until the death of her husband. The same principle was again affirmed in Kutz's App., 40 Pa. 94. The reason given was that until then she could sue. The debt exists, but the remedy is suspended. This decedent died May 4, 1877, and nine years and upwards have now elapsed since the first meeting of this audit and the claim not having been seated upon the trust, or established, and the right of action having accrued at the death of decedent, May 4, 1877, the claim is now certainly barred.

Counsel, however, contend that the law, as thoroughly settled in McClintock's Appeal, governs all cases which arose prior to the decision in Yorks' App., 110 Pa. 69. In answer to this, it is sufficient to say that no cases were excepted by Yorks' Appeal, and that McClintock's Appeal, McCandless' Appeal, and all other similar cases which followed, are directly and expressly overruled. Your auditor therefore must disallow this claim. See last case, Keyser's App., 124 Pa. 80.

### THE BANEY CLAIM.

It appears that Ninian Irwin, the decedent, was one of the executors of David Baney, late of Venango county, state of Pennsylvania, deceased, and that Andrew Baney, a son of said decedent, became of age a short time before Irwin's death, when it is alleged there was due him as one of the heirs of said estate, about $1,100, and that this balance had been paid by J. Wilson Irwin and assigned to him by Andrew Baney. J. Wilson Irwin is now deceased, and his estate makes the claim.

As before stated, the accountant took credit for $500 paid this claimant, contending it was a preferred debt. This item however was stricken out of the account by agreement, and the question as to whether it is entitled to a pro rata share in this distribution will now be considered.

The same objections apply to this claim as to that of Mrs. Irwin, viz.: It has not been properly proven, and is barred by the statute.

The former auditor's report with reference to this claim shows that no evidence was produced to sustain it, except the testi-

mony of J. Wilson Irwin, who testifies to having paid the claim and mentions an assignment, but the report does not show that said assignment was offered in evidence, or that any claim was made thereon. It was not shown that Irwin, the decedent, owed the money and no debt against the estate was established.

But for reasons already set forth that testimony cannot be considered. We must take the case as it now presents itself. The assignment now offered in evidence, marked K, has not been properly proven and identified, the witness to it is not called or accounted for, nor is the signature of Andrew Baney thereto proven. Exhibit O, purporting to be an ex parte affidavit of Andrew Baney as to amount of money due him, certainly is not evidence; nor are any of the letters offered in evidence in this matter properly identified and proven to be in the handwriting of the parties, so that your auditor fails to find any legal testimony upon which this claim can be based.

But the statute of limitations is fatal. This alleged claim was due and suit could have been brought on it before the death of decedent, to wit: September 7, 1876, when it is alleged Andrew Baney became of age. The statute therefore would begin to run from that date. The claim not being seated on the trust, or established as required by law, and over ten years having now elapsed, it certainly under Yorks' Appeal is barred by the statute.

It is contended, however, it is a trust fund and within the exceptions mentioned in that case, and that Mr. Irwin had no property in it whatever. It is not ear marked or traced as a trust fund, but on the contrary, it appears to have been mixed with decedent's own money. Neither does it appear that decedent kept a separate account, or had this money invested as trustee or guardian for said Baney. The money was due before Irwin's death and it was not a direct and continuing trust and exclusively cognizable in equity, but the relation of debtor and creditor existed, and therefore it is within the ruling of Yorks' Appeal.

Exceptions to the report of the auditor upon the part of Mrs. Irwin were overruled by the court, after argument, in the following opinion by WEAND, J.:

We entirely agree with the auditor that the evidence offered

Opinion of Court below.

in support of the claims of J. W. Irwin, assignee and attorney in fact of Andrew R. Baney, and of Mrs Irwin, was insufficient, and the claims might properly have been rejected on this ground alone. We also think that his conclusions of law that the presentation of these claims, with that of Hannah Woods, to use, etc., before the auditor appointed to distribute a previous fund, without any further action by him, was not sufficient to remove the bar of the statute of limitations.

We cannot see how the mere presentation of a claim to an auditor, without an adjudication thereon, can have any more weight or effect than a presentation to an executor or administrator. Nor does there appear to be any hardship in such a rule; for the creditor, by bringing suit in the Common Pleas, can at all times protect himself.

If the contention of these claimants is correct, then the mere offering of a claim to an auditor without evidence to support it, or to indicate its character or amount, is equivalent to a suit at law, although the offer may not be followed up or not contested, simply because it would not be awarded anything out of the fund if established. This is not, in our opinion, the intention of the law in this regard. The true intent is, that creditors ·shall either have their claims adjudicated so as to have a decree or its equivalent, or, by bringing suit, give record notice of their existence. Whilst it is true that the mere bringing of a suit without pleadings or statement is sufficient to toll the statute in the Common Pleas, it is only so because the statute thus provides; but it does not follow that a demand for payment before an auditor, without more, will have the same result, and we think that the decisions of the Supreme Court since Yorks' Appeal are to the effect that nothing short of an adjudication or decree of the court will answer.

In Keyser's App., 124 Pa. 80, it was said: "Nor can the statute be tolled by anything short of a suit at law, or what is its equivalent in the Orphans' Court. A mere demand upon an executor is not such equivalent, and it does not toll the statute." In Reber's App., 125 Pa. 20, the same justice explains what is meant by its "equivalent in the Orphans' Court." The claim had been presented, adjudicated and allowed, and a payment on account in pursuance thereof. The court say, "the liability of the maker of the notes was thus

### Arguments.

established by the decree of the Orphans' Court. . . . . It is the decree of a court of competent jurisdiction, and is as effectual to toll the statute as would be a judgment at law. . . . . It is a question of adjudication; of the establishment of the claim in the Orphans' Court. When so established the statute has no application." The plain meaning of this language cannot be misunderstood, and it defeats the claims of these creditors. It plainly says that it is not the demand alone which is sufficient, but that it must be established by proof, adjudicated by the auditor or court; and when by decree it is thus given the force of a judgment, it will be sufficient to toll the statute, and not otherwise.

There is no merit in the position that these are claims between trustee and cestui que trust. Mr. Irwin by his assignment became a mere creditor, and Mrs. Woods always occupied that position. There was nothing in the conduct of the decedent with reference to her claim which made this anything more than an ordinary debt.

And now, May 20, 1889, the exceptions are overruled and the report of the auditor is confirmed.

Thereupon Mrs. N. Adeline Irwin took this appeal, specifying that the court erred:

1. In disallowing the claim of the appellant.

2. In not allowing her a dividend upon $18,003.32, with interest thereon from the date of the decedent's death.

3. In disallowing credit for the $500, paid J. W. Irwin, assignee of Andrew Baney, as entitled to a preference upon distribution.

*Mr. G. R. Fox, Jr.,* and *Mr. B. E. Chain* (with them *Mr. G. R. Fox*), for the appellant:

1. The claim of Mrs. Irwin was as fully proved as the nature of the case admitted. The death of Ninian Irwin prevented her from testifying. There was not a particle of testimony in contradiction of the facts shown by the papers or of the statements of the witnesses. The petition of the executrix for the sale of real estate, and the orders made thereon, were corroborative evidence of the existence of the claims of Mrs. Irwin and J. Wilson Irwin.

2. The statute of limitations does not apply. The decision in Yorks' App., 110 Pa. 69, was of course not intended to apply retroactively, and ruin innocent persons who had relied upon the law as solemnly declared and acted upon for thirty years. Even the legislature could not enact such an ex post facto law. But the claims involved in this appeal were presented and proved before an auditor in the Orphans' Court, four years after the decedent's death. That was the equivalent of a suit and tolled the statute: Keyser's App., 124 Pa. 80. The statute was tolled also by their being spread upon the records of the court in the proceeding to sell: Arndt's App., 117 Pa. 120.

3. As against the decedent and his personal estate, the Baney claim surely was not within the statute. This fund was all personalty, and there was in the decedent, as executor and guardian, a subsisting trust which must continue until payment, or the presumption of it by lapse of time: Oliver's App., 101 Pa. 302. This was a preferred claim and the payment on account of it was proper. The auditor was mistaken in reporting that the accountant's counsel had abandoned her claim to have credit for the $500 paid J. W. Irwin. There is no evidence of any such abandonment, and nothing of the sort was intended.

*Mr. Charles Hunsicker* and *Mr. George W. Rogers*, for the appellee.

OPINION, MR. CHIEF JUSTICE PAXSON:

If the appellant had supported her claims before the auditor by competent proof, we would have had the question before us whether the presentation of said claims before a previous auditor in the same estate, without an adjudication thereon, tolls the statute of limitations. The auditor rejected her claims as insufficiently proved, in which he was sustained by the court below. It requires a strong case—a palpable error—to justify us in reversing both the court and the auditor upon a question of fact.

We are unable to see any grounds of reversal in this case. The Baney claim of $500, referred to in the third assignment, was not supported by so much as a scintilla of proof. The documentary evidence relied on to establish it, was offered but

Syllabus.

not admitted, because not proved. So much of Mr. Fox's testimony as bore upon the claim was hearsay. The auditor was right in holding there was no legal evidence in support of it.

Nor are we prepared to say that there was error in rejecting the claim of the appellant referred to in the second assignment. It may be, as stated in the argument of her learned counsel, that it " was as fully proved as the nature of the case admitted." It was a very old claim, and we can readily understand how such a claim is more difficult of proof than one of recent origin. But we cannot apply a more lenient rule to a claim because it is stale; on the contrary, such claims require additional caution, and the rules of evidence should not be relaxed in their favor. It is quite as easy to establish an old claim against a dead man's estate as it is to defeat it.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.